PERSONAL JURISDICTION AND SERVICE OF SUMMONS AND COMPLAINT

**VALERIE L. BAILEY-RIHN**
**CIRCUIT COURT, BR. 3**

Form 4.1    Summons (Personal Service; Complaint Attached) [§§ 801.09, 801.095(1)]

17CV0465

STATE OF WISCONSIN     CIRCUIT COURT     Dane COUNTY
                       BRANCH ___

(Plaintiff's name) Maximillian Ledwith
(Plaintiff's address) 306 N. Brooks St.
Madison, WI 53715

Plaintiff

Case No. _____

**FILED**
FEB 24 2017
DANE COUNTY CIRCUIT COURT

v.

(Defendant's name) John Wiedenholt
(Defendant's address) 2202 S. Park St.
Madison, WI 53711

Defendant

(Case classification): (Code #)
30103

**SUMMONS[1]**

THE STATE OF WISCONSIN

To each person named above as a defendant:

You are hereby notified that the plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within (20)[2] (45) days after receiving this summons, you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is _(court address)_, and to _(attorney's name)_, plaintiff's attorney, whose address is _(firm address)_. You may have an attorney help or represent you.

If you do not provide a proper answer within (20)[3] (45) days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future and also may be enforced by garnishment or seizure of property.

*[signature]*

---

[1] See also Wis. Stat. §§ 801.01–.08.

[2] The summons must direct the defendant to answer within 20 days after personal or substituted personal service, unless the action is against the state or an officer, agent, employee, or agency of the state, the defendant is an insurance company, or the action includes a tort claim, in which case the time limit is 45 days. Wis. Stat. § 801.09(2)(a)1.–3.

[3] *Id.*

# CHAPTER 4

(Add an Americans with Disability Act (ADA) advisory if required by local rule)[4]

Dated: _____

                                      (Firm name)
                                      Attorneys for Plaintiff

                                      _____[5]
                                           (Attorney's name)
                                      State Bar No. _____

                                      (Attorney's address)
                                      (Attorney's telephone no.)

---

[4] *See, e.g.,* Iowa Cnty. Circuit Court Rules, ADA Advisory, *available at* http://www.wisbar.org/Directories/CourtRules/Wisconsin%20Circuit%20Court%20Rules/Iowa%20County%20Circuit%20Court%20Rules.pdf. Individuals who need accommodations may make requests orally or in writing, and the court may ask the requesting individual to fill out form GF-153.

[5] The summons must be subscribed with the handwritten signature of the plaintiff or attorney, not a stamped reproduction. Wis. Stat. § 801.09(3); *Schaefer v. Riegelman*, 2002 WI 18, 250 Wis. 2d 494, 639 N.W.2d 715. The attorney must be licensed in Wisconsin. *Schaefer*, 2002 WI 18, ¶ 17, 250 Wis. 2d 494.

© June 2014, State Bar of Wisconsin PINNACLE

| STATE OF WISCONSIN | CIRCUIT COURT | DANE COUNTY |
|---|---|---|
| | BRANCH III | |

Maximillian Ledwith
306 N Brooks St Madison, WI 53715

v.

John Wiederholt, DDS of Access Community Health Center's Dental Clinic
1102 S Park St Madison, WI 53711.
   A Wisconsin dental services provider.

Case No. _____

(Medical Malpractice-
Negligence ): (Code # )

COMMENT1): Form 2.1 Complaint
[§§ 802.01–.05]

When using these forms, refer to to the book's footnotes and chapter

## COMPLAINT

Plaintiff, (Maximillian Ledwith), who is representing himself, alleges:

### GENERAL ALLEGATIONS

1. Plaintiff, Maximillian Ledwith, hereafter referred to as "Max" resides at 306 N Brooks St Madison, WI 53715

2. Defendant John Wiederholt, DDS, hereafter referred to as "Provider", practices at 1102 S. Park St. Madison WI 53711 at Access Community Health Center's Marshall Erdman Dental Clinic, hereby referred to as "Access".

3. Upon information and belief, defendant John Wiederholt, DMD, did not uphold his requirement to provide adequate, appropriate, informed and unbiased medical care to Plantiff Maximillian Ledwith over the course of his treatment, and caused unnecessary and unusually extensive complications and long-term pain and suffering as the result of a poorly planned, ill-advised, exececuted and unnescesarily aggresive manual wisdom tooth extraction procedure peformed in a regular dental chair.

### FIRST CLAIM
Negligence

1. On July 6th, 2015, Max was innapropriately advised by Provider that his wisdom teeth needed to be removed to PREVENT future dental problems, such as simple cavities, despite the fact that none of his teeth were actually impacted.

2. Provider, DDS, did not follow established guidelines within the medical and dental community which state that patients be referred to oral surgery for anything other than the most benign third molar extractions of a signle tooth, or at least be provided with 2 or more appointments, or one per tooth, as to minimize trauma incurred during this unusually aggressive type of manual extraction.
3. Provider was observed as being highly distracted, irritable, and angry throughout the office visit and following procedure, and consquently, did not take the required and dictated amount of time or appropriate steps to remove the four molars properly.

4. During the procedure, Provider was observed to be experiencing increasing difficulty in manually extracting the third molars. During the attempted extraction of the upper left tooth, the dentist had extreme difficulty in removing the molar, and in his attempt to meet his overbooked appointments schedule, as well as budgetary and time constraints imposed by Access, Provider exerted unnecessary, dangerous, and terrifying levels of pressure on Max's temporomandibular joint and surrounding musculo-skeletal system, leading to obvious instant, unusual damage and severe pain. He continued the battle to forcibly rip the stubborn upper left third molar from its socket at the back of the mouth, despite repeated pleas from Max to abort the procedure. In a desperate last attempt to remove the tooth, Provider planted his foot on the dental chair, touching Max's leg inappropriately, and loudly verbalized his frustration.

5. Provider continued the detrimental and ultimately, disabling, train of negligence when he failed to address the unusually high level of post-"operative" swelling and disturbingly high level of pain present in the left side of Max's face, even when prompted by the patient immediately following the extraction.
6. Provider failed to provide proper follow up care without prejudice after the procedure, which led to an unfortunate delay in evaluation and treatment of the resulting disabling and severe jaw pain and related functional issues that resulted from the botched procedure.
7. The symptoms and resulting conditions got progessively worse during the following 3 years, as Max was able to tie them to the fateful procedure performed by Provider, and as evidenced by the MRI performed on Max at UW Imaging at 1 S Park St. They resulted in Max experiencing the full battery of severe TMJ-Disorder, which require a multi-disciplinary approach to make them even mildly manageable on a daily basis. The sypmtoms and conditions include, but are not limited to TMJ pain swelling, dysfuction including inability to speak properly, or at all, inability to eat or drink liquids properly, difficult and painful swallowing, facial nerve pain and muscle spasms, neck, back, shoulder, hip, knee, foot, and whole body pain and joint dysfunction, inner eye pain and pressure, migraine headaches, chest pain from nerve injury, severe anxiety, agoraphobia, white coat syndrome (resulting in delay of treatment), and depression which worsened as a result of the botched and unsuccessful procedure. They severely limit if not completely inhibit his ability to work and obtain substantial gainful income, as well has have meaningful social relationships.
8. Provider had a legal duty to disclose all significant medical information he posessed or should have reasonably posessed about his need for what was a complicated, costly and disabling procedure.

SECOND CLAIM

### Informed Consent

1. The day of the procedure, Max was required to sign an informed consent form, but Provider was rushed and ultimately noncompliant when Max was interested in learning more about the steps involved in the procedure and the general safety of this type of extraction, as well as how neccessary it was at the time.

2. Provider did not properly advise Ledwith of the risks vs. Benefit counsel as Max demanded. He simply wanted to get it over with.

### THIRD CLAIM
### Discrimination

1. Provider was disrespectful regarding Max's three protected statuses, which he identifies as being, in order of importance, sexual orientation, gender identity, disability, nonreligion, and homelessness, all of which he made an issue at various points throughout their interaction over the course of 2 years.

2. Provider informed Ledwith that he has never operated on a patient who identified as LGBTQI, but reassured him that he was in good hands, despite his reservations.

3). Provider explicitly asked Max if he had receptive anal intercourse at any point during his sex life.

### FOURTH CLAIM
### Sexual Misconduct

1. Provider was unnecessarily tactile with Max, and got too close to him at multiple times during the procedure, outside the realm of what would normally be expected in the office of a medical provider.

2. Max feels he was sexually asaulted when Provider placed his foot on the chair to gain traction during the manual extraction, and the proceeded to ajust his footing, moving his toes to Max's inner thigh area, about 3 inches from his genitals, where it would stay until the extraction was concluded.

WHEREFORE, plaintiffs demand judgment against defendants jointly and severally for:

— Pain and Suffering- Personal Damage of $100,000

— Injunction to require Provider to stop practicing until it can be confirmed that he understands how to not hurt his patients.

— State Liscense Review- Dental- Revocation of authority to practice in Wisconsin again.

— Reimbursement for lost income/earning potential.

## JURY DEMAND

Plaintiffs demand a trial by a jury of twelve.

Dated: 12/20/16